IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

| | | |
|---|---|---|
| SHERMAN P. HAWKINS, | ) | Cause No. CV 08-25-BLG-RFC-CSO |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | FINDINGS AND RECOMMENDATION |
| | ) | OF U.S. MAGISTRATE JUDGE |
| MIKE MAHONEY; BOARD OF | ) | |
| PARDONS AND PAROLE, | ) | |
| | ) | |
| Respondents. | ) | |
|  _____ | ) | |

On February 8, 2008, Petitioner Sherman Hawkins filed this action seeking a writ of habeas corpus under 28 U.S.C. § 2254. Hawkins is a state prisoner proceeding pro se.

On August 4, 2008, Hawkins was ordered to use the Court's standard form to submit a Third Amended Petition. See Order Requiring Petitioner to File (doc. 11) at 1-2. Hawkins submitted his Third Amended Petition on September 3, 2008.

**I. Preliminary Screening**

Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts requires courts to examine the petition before ordering the respondent to file an answer or any other pleading. The petition must be summarily dismissed "[i]f it plainly appears from the face of the

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 1

petition and any attached exhibits that the petitioner is not entitled to relief in the district court." Id. If summary dismissal is not warranted, the judge must order the respondent to file an answer, motion, or other response or "to take other action the judge may order." Id.

## II. Background

Hawkins was arrested on July 21, 1973, in connection with the death of his wife. He asserts that she told him that he was not the father of his children and he shot her. A jury in Montana's Thirteenth Judicial District Court, Yellowstone County, found him guilty of first-degree murder. He was sentenced to life in prison. See Third Am. Pet. (doc. 14) at 6, ¶ 15A; id. at 2, ¶¶ 3-7.

In 2005 and again in 2007, the Montana Board of Pardons and Parole ("the Board") denied Hawkins's applications for parole. In 2007, the Board stated that it would review his case in five years. See id. at 11.

Hawkins signed his federal habeas petition and deposited it in the prison mail system on February 5, 2008. See Pet. (doc. 1) at 23, Pet'r Decl. ¶ 3; Houston v. Lack, 487 U.S. 266, 270-71 (1988) (establishing prison mailbox rule). His Third Amended Petition was filed on August 28, 2008. See Third Am. Pet. at 15, Pet'r Decl. ¶ C.

## III. Hawkins's Allegations

Hawkins contends, first, that the United States Supreme Court "invalidated" Montana's "murder statutes" as effective in 1973,[1] so that his own conviction under those statutes was also invalidated. He further contends that the Montana Supreme Court's decision in Lott v. State, 150 P.3d 337, 342 ¶ 22 (Mont. 2006), gave him an opportunity to raise this issue in a 2007 state habeas

---

[1] See Sandstrom v. Montana, 442 U.S. 510, 524 (1979).

petition and that the Montana Supreme Court decided it in a manner contrary to federal law. See Third Am. Pet. at 3-5, ¶ 15A.

Second, Hawkins claims that his trial counsel was ineffective for failing to locate and call witnesses who could have presented mitigating evidence at his trial in 1973. Hawkins says that he discovered in 1997 that such witnesses existed. He also asserts that the Montana Supreme Court addressed in an unreasonable manner his 1998 postconviction petition raising this claim. See id. at 6-8, ¶ 15B.

Third, Hawkins alleges that the Board of Pardons and Parole ("the Board") violated his due process rights by relying on "immutable factors" to deny him release on parole in 2005 and 2007. See id. at 9-12, ¶ 15C.

## IV. Analysis

### A. Second or Successive Claims

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a district court lacks jurisdiction to consider a second or successive petition under § 2254 where the petitioner has already filed one federal petition that was not dismissed for failure to exhaust state remedies. See 28 U.S.C. § 2244(b)(1), (2), (3)(A); Burton v. Stewart, 549 U.S. 147, ___, 127 S. Ct. 793, 794 (2007) (per curiam) (remanding case adjudicated and appealed on merits to district court for dismissal for lack of jurisdiction); Slack v. McDaniel, 529 U.S. 473, 485-86 (2000).

The instant petition is at least the fifth that Hawkins has filed in this Court.[2] Some of his previous petitions concern parole, but some challenged his original conviction. In Hawkins v.

---

[2] The Court's electronic docket only goes back to the early 1990's.

Mahoney, No. CV 99-109-BLG-RWA (D. Mont. filed July 7, 1999), after the Court had ordered the State to file the trial transcript, Hawkins was ordered to obtain leave from the Ninth Circuit Court of Appeals to proceed with a successive petition. See Order (doc. 39 CV 99-109-BLG). He failed to obtain leave. The petition was dismissed on July 13, 2001, as an unauthorized second or successive petition. See Order (doc. 43 CV 99-109-BLG). Both this Court and the Ninth Circuit Court of Appeals denied a certificate of appealability. See Order (doc. 47 CV 99-109-BLG); Hawkins v. Mahoney, No. 99-36184 (9th Cir. COA denied May 30, 2000).

On November 5, 2002, another petition was dismissed as an unauthorized second or successive petition. See Hawkins v. Mahoney, No. 02-34-BLG-RFC (D. Mont. filed Feb. 4, 2002). Hawkins did not appeal.

Although Hawkins challenges decisions issued by the Montana Supreme Court in 1999 and 2007,[3] the 1973 Yellowstone County judgment underlies Hawkins's filings in the Montana Supreme Court as well as the instant petition. Therefore, Hawkins was required to obtain leave from the Ninth Circuit Court of Appeals "*[b]efore* a second or successive application . . . is filed in the district court." 28 U.S.C. § 2244(b)(3) (emphasis added). He did not do so. His first two claims must be dismissed for lack of jurisdiction as unauthorized successive claims against his 1973 conviction and sentence.

**B. Parole Claim**

    **1. Parole Claim is Not Successive**

Because Hawkins "did not have an opportunity to challenge the state's conduct in a prior

---

[3] See Hawkins v. State of Montana, No. OP 07-0550 (Mont. Oct. 31, 2007); Hawkins v. Mahoney, No. 98-168 (Mont. Apr. 20, 1999). These opinions are included among Hawkins's exhibits to the Third Amended Petition.

petition," Hill v. Alaska, 297 F.3d 895, 898 (9th Cir. 2002), his claim regarding the Board's denial of parole in 2005 and 2007 is not subject to AEDPA's restriction on second or successive petitions.

### 2. Due Process

Although Hawkins's claim may be barred on procedural grounds, such as procedural default, the federal statute of limitations, and/or the deferential standards of 28 U.S.C. § 2254(d), it is clear that he is not entitled to relief on the merits. Accordingly, it is more efficient to proceed to the merits. See, e.g., 28 U.S.C. § 2254(b)(2); Lambrix v. Singletary, 520 U.S. 518, 524-25 (1997) (making detailed analysis of constitutional issue despite outstanding question as to procedural bar).

A prisoner has no federal constitutional right to be conditionally released before the expiration of a valid sentence. Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 (1978). A state statute may create an expectation of parole and therefore give rise to a liberty interest protected by the Due Process Clause. See, e.g., Board of Pardons v. Allen, 482 U.S. 369, 373 (1987). That is the case in Montana for inmates who were sentenced before March 20, 1989[4] ("Allen inmates").

Hawkins is an Allen inmate. But, contrary to Hawkins's insistence, Allen did not create a "right" to parole or even a "right" to become suitable for parole. A liberty interest is not the same thing as a right or presumption. Under Montana law, both before and after Allen, it remains entirely within the discretion of the Board to decide whether, "*in its opinion*[,] there is reasonable probability that the prisoner can be released without detriment to the prisoner or to the community." Mont.

---

[4] This was the effective date of an amendment to the governing statute. See Mont. Code Ann. § 46-23-201 (1987); 1989 Mont. Laws ch. 188, § 2 (changing "shall release" to "may release").

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 5

Code Ann. § 46-23-201(1) (1985) (emphasis added).[5]  Allen simply requires the Board, in making that decision, to provide due process to inmates sentenced under the pertinent statutory scheme.  In this context, due process includes advance notice of the Board's intention to consider parole, a hearing on the parole application, and a written statement of the Board's reasons for denying parole.  Greenholtz, 442 U.S. at 16.  Additionally, there must be "some indicia of reliability" in the evidence underlying the Board's reasons.  See Biggs v. Terhune, 334 F.3d 910, 915 (9th Cir. 2003) (quoting Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987)); see also Superintendent v. Hill, 472 U.S. 445 (1985).

Hawkins does not claim that any of these requirements were not met in his case.[6]  He complains that the Board found in 2005 that he was capable of fulfilling the obligations of a law-abiding citizen and that his release would not be a detriment to himself or the community.  To demonstrate this finding, however, he relies on the Board's statement that it "will be considering gradual release" at his next hearing in 2007.  He asserts that the phrase "'will be considering' is a determinative phrase of a settled conclusion."  Third Am. Pet. at 11.  It isn't.  It means the Board will consider gradual release or pre-release placement, not that it necessarily will find or has already found such placement to be appropriate.

Hawkins claims that the Board denied parole for reasons that are "immutable," that is, based

---

[5] This portion of the statute remains in effect today and has not been amended since at least 1983.

[6] Hawkins attempts to reduce the scope of the Board's discretion by asserting that the Allen Court stated that the Board "lacked discretion as in the past it had never parole[d] more than 350 inmates a year – thus its actions were statistical and not discretionary."  Third Am. Pet. at 10 (citing Allen, 482 U.S. at 380).  The Allen Court did not say that or anything like it.  The number that Hawkins cites actually appears in 482 U.S. at 371 n.2.  Neither there nor anywhere else in the opinion does the Court purport to restrict the Board's discretion based on its past actions.  In fact, the Court specifically stated that "the discretion of the Board is 'very broad.'"  Allen, 482 U.S. at 381 (quoting Greenholtz, 442 U.S. at 13).

on his past conduct and beyond his power to alter. That is not entirely true. In a pleading filed in another case in this Court, Hawkins averred:

> In September 2005 Plaintiff [Hawkins] went to the parole board (Board) and was flopped two (2) years, with a statement the Board would consider gradual release to pre-release at the 2007 parole hearing. In March 2006 Plaintiff [Hawkins] was moved to the low security side of the prison. During the summer informant DeMers ask [sic] Plaintiff to join his escape plan. Plaintiff talk [sic] with DeMers at length over the summer, and his friends, giving suggestion, but repeatedly denied all offers to join the escape. He did aid in making connections with mutual friends, however. But in January 2007 he informed DeMers that he wanted nothing more to do with it, however he still helped DeMers talking to other inmates.

Compl. (doc. 2) at 5-6, ¶ 25, Hawkins v. Ferriter, No. CV 07-81-H-DWM-RKS (D. Mont. filed Dec. 26, 2007).[7] Especially in light of Hawkins's previous history of and interest in escape and "poor supervision history,"[8] see Third Am. Pet. at 12, ¶¶ 2, 4, 6, his consultant's role in the DeMers plot is fresh evidence of Hawkins's unwillingness to fulfill the obligations of a law-abiding citizen. Contrary to Hawkins's assertion, the Supreme Court in Muhammad v. Close, 540 U.S. 749 (2004) (per curiam), certainly did not "reject[] using prison misconduct to deny parole." Third Am. Pet. at 11. Muhammad dealt with a claim of retaliation and, specifically, an issue under Heck v. Humphrey, 512 U.S. 477 (1994). Misconduct in prison remains a constitutionally acceptable reason to deny parole. The Board legitimately relied on the 2007 disciplinary hearing and reclassification in

---

[7] A court may take judicial notice of its own records. See Rand v. Rowland, 154 F.3d 952, 961 (9th Cir. 1998) (en banc); United States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980).
    Of course, the Board probably did not consider this admission in Hawkins's Complaint, but the Board believed that Hawkins did what was charged in the disciplinary violation. Hawkins's admission in his Complaint makes it impossible to find that the Board erred in its belief.

[8] Hawkins was furloughed in 1987, committed several crimes, and was convicted and sentenced for them. He escaped in 1997 and was sentenced to an additional four years for that offense. See Hawkins v. Board of Pardons and Parole, No. OP 08-0046 (Mont. Mar. 12, 2008). This opinion is included among Hawkins's exhibits to the Third Amended Petition.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 7

denying parole.

Hawkins also claims that the Board requires only 120 days of clear conduct (that is, 120 days with no violation of the rules) as a precondition to releasing an inmate on parole. See Third Am. Pet. at 11. Again, that is plainly incorrect. The regulation says "[u]nless the board otherwise orders, an inmate should have <u>a minimum of</u> 120 days disciplinary-clear status before appearing before the board and prior to release on parole." Mont. Admin. R. 20.25.303(1) (eff. Feb. 12, 1999)(emphasis added). The regulation does not guarantee parole to persons who have 120 days of clear conduct or limit the Board's ability to consider misconduct occurring more than 120 days before a parole hearing.

Hawkins fails to show that his right to due process was violated when the Board denied parole in either 2005 or 2007. This claim should be denied.

### 3. Ex Post Facto Clause

Hawkins also objects to the Board's decision deferring reconsideration of parole for five years. He asserts that the applicable law in 1973 provided for annual review of his suitability for parole. See Third Am. Pet. at 11-12. This claim falls under the Ex Post Facto Clause.

The United States Constitution provides that "No State shall . . . pass any . . . ex post facto Law." U.S. Const. Art. I, § 10. The Ex Post Facto Clause prohibits "laws that retroactively alter the definition of crimes or increase the punishment for criminal acts." California Dep't of Corrections v. Morales, 514 U.S. 499, 504 (1995). However, "not every retroactive procedural change creating a risk of affecting an inmate's terms or conditions of confinement is prohibited. The question is a matter of degree." Garner v. Jones, 529 U.S. 244, 250 (2000) (referring to Morales, 514 U.S. at 509)

(internal citation and quotation omitted). The Clause is violated only when (1) a law, regulation, or order is applied retroactively and when (2) such application "creates a *sufficient* risk of increasing the measure of punishment attached to the covered crimes." Himes v. Thompson, 336 F.3d 848, 855 (9th Cir. 2003) (emphasis altered); see also id. at 854 (citing Weaver v. Graham, 450 U.S. 24, 29 (1981), and Ross v. State of Oregon, 227 U.S. 150, 162-63 (1913)).

Hawkins does not address this test. He claims that the Board's reliance on his 2007 disciplinary violation – that is, his participation in the DeMers conspiracy to escape – increased his punishment because it resulted in the Board's five-year deferral of his next parole hearing. However, Hawkins cannot deny that he participated in a conspiracy to help other inmates escape. A five-year deferral is not disproportionate under those circumstances, nor is it automatically suspect in the eyes of the United States Supreme Court. Morales' progress reviews changed from yearly to every three years, see Morales, 514 U.S. at 503, but another inmate's changed from every three years to every eight years, see Garner, 529 U.S. at 247. In neither Morales nor Garner did the Supreme Court find a violation of the Ex Post Facto Clause.

Additionally, Hawkins fails to consider that he has an opportunity to obtain an earlier hearing. See Mont. Admin. R. 20.25.401(13). There is no indication that the Board will refuse to consider parole sooner if Hawkins can show that he deserves such consideration. In fact, the Board has said that it will, "[u]nder any circumstance," review Hawkins's case in August 2010, not 2012. See Board Decision at 1 (June 30, 2008).[9] Consequently, there is not a sufficient risk that the Board's decision to defer reconsideration of his case for five years will cause him to spend more time

---

[9] This document is the last page of Hawkins's unscanned exhibits.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 9

in prison than he would spend if the Board were to review his case sooner. The regulations provide, so to speak, an escape hatch. If Hawkins significantly improves his circumstances by obtaining low-side placement once again, and if he refrains from breaking applicable rules, he might be permitted to appear before the Board even before 2010.

Finally, to whatever extent Hawkins seeks to make a facial challenge to a change in the regulations governing the Board, see Himes, 336 F.3d at 855, his claim is an unauthorized successive claim. Effective December 1, 1978, the Board required annual progress reviews for any "inmate denied parole for more than one (1) year." See Mont. Admin. R. 20.25.401(8), at 20-257 (eff. December 1, 1978). Earlier review required approval of the pre-parole committee and the Board. Id. R. 20.25.401(7). In 1994, the Board eliminated annual review and stated that it might require the inmate to "serve until discharge" of his sentence. See Mont. Admin. R. 20.25.401(13) (eff. Jan. 28, 1994). Hawkins became eligible for parole in 1994 and was denied. He appeared again before the Board in August 1995, August 1996, September 1997, September 1998, December 1998, September 1999, September 2003, September 2005, and September 2007. He filed a habeas petition in this Court on February 4, 2002. In that petition, Hawkins had "an opportunity to challenge the state's conduct," Hill, 297 F.3d at 898, because he could have raised a claim regarding denial of annual review between September 1999 and September 2001. Therefore, any such claim is a successive one requiring pre-filing authorization from the Court of Appeals.

Hawkins's challenge to the five-year deferral of reconsideration for parole should be denied.

**V. Certificate of Appealability**

    **A. Governing Law**

Pursuant to 28 U.S.C. § 2253©, "[a] certificate of appealability ['COA'] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  See Hohn v. United States, 524 U.S. 236 (1998); Lambright v. Stewart, 220 F.3d 1022, 1024 (9th Cir. 2000).  The standard of a "substantial showing" can be satisfied on an issue-by-issue basis.  Lambright, 220 F.3d at 1024 (citing 28 U.S.C. § 2253(c)(3)).

> [I]n order to make a substantial showing of the denial of a federal right a petitioner . . . "must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are 'adequate to deserve encouragement to proceed further.'"

Lozada v. Deeds, 498 U.S. 430, 432 (1991) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).  See also Slack v. McDaniel, 529 U.S. 473, 484 (2000) (petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.").  Any doubt as to whether a petitioner has met the standard is resolved in his favor. Lambright, 220 F.3d at 1025.  The Court must "state why a certificate should not issue."  Fed. R. App. P. 22(b)(1) (emphasis added).

Where, as here, the district court dismisses a claim on procedural grounds, the court must decide whether "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right" and whether "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Lambright, 220 F.3d at 1026 (quoting Slack, 529 U.S. at 484).

### B. Discussion

#### 1. Successive Claims

The Court is not aware of any basis on which a reasonable jurist could find that Hawkins's challenges to his 1973 conviction and sentence elude the statutory restriction on successive petitions. A COA should be denied on his first two claims.

#### 2. Parole Claim

A reasonable jurist might question whether Hawkins's claim regarding denial of his parole is subject to dismissal because it is contained in the same "application" for relief as his conviction-related claims, which plainly are successive. See 28 U.S.C. § 2244(b)(3). However, that issue need not be decided in this case, because the parole claim is subject to dismissal for lack of merit.

Hawkins has failed to identify any respect in which the Board, in either 2005 or 2007, failed to provide due process in denying him parole. His objections to the Board's decision misstate the meaning of the Allen decision and misrepresent the Board's previous statements. The Board's deferral of review for five years is not disproportionate in light of Hawkins's admitted participation in a conspiracy to help other inmates escape, and Hawkins has an opportunity to obtain an earlier review if he can so persuade the Board that he deserves it. Consequently, there also is not a sufficient risk that the period of his incarceration will be increased merely because the Board will not consider his case sooner. To whatever extent Hawkins meant to make a facial challenge to the regulatory change that permitted the Board to dispense with annual reviews, his claim is, again, successive. The regulation was changed in 1994. Hawkins became eligible for parole in 1994 and probably could have made the facial challenge then. At the latest, he could have made it in his 2002

habeas petition, because, as of the filing date of that petition, his parole application had not been reviewed for more than two years.

The Court does not believe that reasonable jurists would find a basis on which to disagree with these conclusions. Reasonable jurists might differ as to the reason for dismissal, but not as to the result. A COA should be denied.

Based on the foregoing, the Court enters the following:

### RECOMMENDATION

1. The first two claims in the Third Amended Petition and any claim regarding the regulatory change in 1994 should be DISMISSED as unauthorized successive claims.

2. Hawkins's third claim, regarding denial of parole in 2005 and 2007, should be DENIED on the merits.

3. The Clerk of Court should be directed to enter by separate document a judgment of dismissal as to Hawkins's first two claims and a judgment in favor of Respondents and against Hawkins on his claim regarding denial of parole in 2005 and 2007.

4. A certificate of appealability should be DENIED.

### NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), Petitioner may serve and file written objections to this Findings and Recommendations within ten (10) business days of the date entered as indicated on the Notice of Electronic Filing. A district judge will make a de novo determination of those portions of the Findings and Recommendations to which objection is made. The district judge may accept,

reject, or modify, in whole or in part, the Findings and Recommendations. Failure to timely file written objections may bar a de novo determination by the district judge.

<u>Hawkins must immediately notify the Court of any change in his mailing address by filing a "Notice of Change of Address."</u> Failure to do so may result in dismissal of his case without notice to him.

DATED this 10th day of September, 2008.

       /s/ Carolyn S. Ostby
      Carolyn S. Ostby
      United States Magistrate Judge